UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SONYA KELEPECZ | : | CIVIL ACTION NO. |
|     Plaintiff, | : | _____ |
| | : | |
| VS. | : | |
| | : | |
| CHILDREN'S LEARNING CENTERS | : | |
| OF FAIRFIELD COUNTY, INC. | : | |
|     Defendant. | : | February 1, 2020 |

## **COMPLAINT**

### **INTRODUCTION**

1. This is an action to redress the discriminatory treatment suffered by the Plaintiff in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (hereinafter "ADEA"), the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-60 *et seq.*, (hereinafter "CFEPA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter "FMLA")

### **JURISDICTION**

2. Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. § 1331. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367.

3. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") on November 11, 2019 and a complaint of discrimination with the Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO") on March 9, 2020, against the Defendant.

4.      Plaintiff received release of jurisdiction notices from the EEOC on December 4, 2020 and from the CHRO on December 23, 2020.  This action is brought within 90 days of the receipt of such notices.

**PARTIES**

5.      During all times relevant to this complaint, Plaintiff resided and worked in the State of Connecticut.

6.      During all times relevant to this complaint, Plaintiff was employed by the Defendant for at least 12 months.

7.      During all times relevant to this complaint, Plaintiff worked for at least 1,250 hours of service with the Defendant during the 12-month period prior to the date of her leave.

8.      During all times relevant to this complaint, Defendant was authorized to conduct business in the State of Connecticut.

9.      Defendant is a nonprofit private agency in the business of assisting with early childhood care programs.

10.     Defendant has more than fifty employees.

11.     Defendant is an employer under 29 U.S.C. § 2611(4).

**FACTS**

12.     Defendant hired the Plaintiff in 2008 as Director of Development.

13.     Plaintiff is a sixty-nine (69) years of age woman who suffers from a serious health condition known as trigeminal neuralgia.  This condition is a serious neurological disorder which causes excruciating pain, which, among other things, significantly limits a person's ability to speak, eat, brush teeth and wash face.

14.     The Defendant became fully aware of the Plaintiff's condition and its nature in 2016.

15.     During the years of 2017 and 2018, Plaintiff, with the Defendant's permission on several occasions took days off or came to work late due to the consequences of trigeminal neuralgia.  Eventually, on August 26, 2019, Plaintiff suffered an unforeseeable debilitating attack of pain caused by this condition.  As a result, she notified the Defendant that given this outbreak she could speak and therefore could not work.

16.     The condition continued for several days making it clear that Plaintiff would be unbale to return to work as soon as she would have hoped.  Plaintiff, accordingly, informed the Defendant that she would be out on leave until the condition improved and her physician permitted her to return to the office.

17.     Due to this condition, Plaintiff went on medical leave from August 26, 2019 to September 18, 2019.

18.     During her leave, Plaintiff continued to help with many work-related issues and was continually in communication (via texts) with her boss, Mr. Marc E. Jaffe, as confirmed by numerous text messages.

19.     During the same period of leave, however, Mr. Jaffee while feigning to engage in routine correspondence with Plaintiff, unbeknownst to Plaintiff, was busy searching for her permanent replacement.

20.     Plaintiff retuned to work on September 18, 2020.

21. Upon her return to work, it was clear that agents of the Defendant, including Mr. Jaffe and human resource representatives, were fully aware of the severity of the impairment she had just suffered.

22. On October 3, 2019, two weeks after Plaintiff's return to work, without any warning or other preliminary indications, Mr. Jaffee summarily discharged Plaintiff with one sentence, when he stated, "we need a new set of skills."  Without warning Plaintiff, upon her return form leave, inexplicably became obsolete.

23. Plaintiff was replaced in her position by a man under of twenty-eight (28) years of age named Corey Paris.

24. In the last and most recent performance review performed by Defendant (dated 2017) Defendant stated in writing, among other things, that Plaintiff did "too much for one person;" she did both donor "development" and donor "marketing." It went on to state that even though "she got little support from ED and Board" "if something needed to be done…she rolled up her sleeves and got it done."

25. Plaintiff met her donor amounts goals repeatedly in the years 2017, 2018 and 2019, even earning Mr. Jaffee a $20,000 bonus as result.

26. After ten (10) years of working for the Defendant, Plaintiff's central task of raising money was being met and surpassed, the only thing that had changed was that she was ten (10) years older than when first hired and for the first time she took and extended leave due to her disability.

27. Plaintiff contends that her discharge was motivated by her age at the time, sixty-eight (68) years of age.  Her belief is supported by facts above and the words and hiring and firing practices of Mr. Jaffe over the past several years.

28. Mr. Jaffee has continually favored the hiring and the management of persons under the age of 40; he repeatedly told Plaintiff that she needed to be more like the young employees, along with stating that she "needs to get along better with young employees."

29. Also indicative are Mr. Jaffee's words at the time of the discharge, "we need a new set of skills," in conjunction with the fact that Plaintiff was not offered training or any other way of gaining such skills, nor provided with an explanation of the skills she allegedly lacked.

30. Plaintiff also contends that her discharge was motivated by the fact that she suffers from a disability, trigeminal neuralgia, and that for the first time it required her to take a leave of absence as an accommodation.

31. Lastly, Plaintiff contends that her discharge was motivated by the fact that she exercised her right to take medical leave of absence.

**COUNT ONE:** <u>ADEA</u>

32. Paragraphs 1-31 are hereby incorporated by reference and made part of this First Count.

33. During all times relevant to this complaint, Mr. Jaffee and acting within the scope of agency powers.

34. During all times relevant to this complaint, Plaintiff was a member of a protected class under the ADEA, qualified for her position and performing her position's duties.

35. During all times relevant to this complaint, Mr. Jaffee made the comments suggesting a preference for "younger" employees, discharged Plaintiff and replaced her with a significantly younger person. As such, age played a role in the Defendant's

employer's decision making process and had a determinative effect on the outcome of that process.

36. Accordingly, Defendant violated the ADEA with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**COUNT TWO:** ADA

32. Paragraphs 1-31 are hereby incorporated by reference and made part of this First Count.

33. During all times relevant to this complaint, Mr. Jaffee and acting within the scope of agency powers.

34. During all times relevant to this complaint, Plaintiff was a member of a protected class under the ADA, qualified for her position and performing her position's duties.

35. During all times relevant to this complaint, Mr. Jaffee discharged Plaintiff after it became evident that her disability required Plaintiff to take a substantial period of leave and may require he same in the future. As such, Plaintiff's disability played a role in the Defendant's employer's decision-making process and had a determinative effect on the outcome of that process.

36. Accordingly, Defendant violated the ADA with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**COUNT THREE:** ADA (Regarded disability)

32. Paragraphs 1-31 are hereby incorporated by reference and made part of this First Count.

33. During all times relevant to this complaint, Mr. Jaffee and acting within the scope of agency powers.

34. During all times relevant to this complaint, Plaintiff was a member of a protected class under the ADA, qualified for her position and performing her position's duties.

35. During all times relevant to this complaint, Mr. Jaffee regarded Plaintiff's condition as a disability and discharged Plaintiff after it became evident that her regarded disability required Plaintiff to take a substantial period of leave and may require he same in the future. As such, Plaintiff's regarded disability played a role in the Defendant's employer's decision-making process and had a determinative effect on the outcome of that process.

36. Accordingly, Defendant violated the ADA with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**COUNT FOUR:** CTFEPA (Age)

32. Paragraphs 1-31 are hereby incorporated by reference and made part of this First Count.

33. During all times relevant to this complaint, Mr. Jaffee and acting within the scope of agency powers.

34. During all times relevant to this complaint, Plaintiff was a member of a protected class under the CTFEPA, qualified for her position and performing her position's duties.

35. During all times relevant to this complaint, Mr. Jaffee made the comments suggesting a preference for "younger" employees, discharged Plaintiff and replaced her with a significantly younger person.

36. Accordingly, Defendant violated the CTFEPA with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**COUNT FIVE:**  CTFEPA (Disability)

32. Paragraphs 1-31 are hereby incorporated by reference and made part of this First Count.

33. During all times relevant to this complaint, Mr. Jaffee and acting within the scope of agency powers.

34. During all times relevant to this complaint, Plaintiff was a member of a protected class under the CTFEPA, qualified for her position and performing her position's duties.

35. During all times relevant to this complaint, Mr. Jaffee discharged Plaintiff after it became evident that her disability required Plaintiff to take a substantial period of leave and may require the same in the future.

36. Accordingly, Defendant violated the CTFEPA with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**COUNT SIX:**  CTFEPA (Regarded as disability)

32. Paragraphs 1-31 are hereby incorporated by reference and made part of this First Count.

33. During all times relevant to this complaint, Mr. Jaffee and acting within the scope of agency powers.

34. During all times relevant to this complaint, Plaintiff was a member of a protected class under the ADA, qualified for her position and performing her position's duties.

35. During all times relevant to this complaint, Mr. Jaffee regarded Plaintiff's condition as a disability and discharged Plaintiff after it became evident that her regarded disability required Plaintiff to take a substantial period of leave and may require the same in the future.

36. Accordingly, Defendant violated the ADA with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**COUNT SEVEN**: FMLA

1-31. Paragraphs 1-18 are hereby incorporated by reference and made part of this Count Three.

32. By the above facts, Defendant discharged Plaintiff in relation for exercising her rights under the FMLA, and such conduct is retaliatory and discriminatory in violation of 29 U.S.C. § 2615(a)(2).

WHEREFORE, Plaintiffs claim judgment against the Defendant as follows:

1. Back pay and front pay in an amount to be determined by the trier of fact with interest from the date said sum was due;

2. Compensatory damages in an amount to be determined by the trier of fact;

3. Punitive damages and or liquidated damages in an amount to be determined by the trier of fact;

4. An injunction permanently enjoining Defendants, its officers, agents, employees, successors, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of age or disability;

5. An award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g);

6. Money damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(I)-(iii) to compensate Plaintiff for all losses sustained as a result of the defendants' termination of her employment, and an additional, equal amount as liquidated damages, including front pay in lieu of reinstatement;

7. Attorneys' fees and costs incurred by Plaintiff in connection with this action pursuant to 29 U.S.C. § 2617(a)(3);

8. Punitive damages;

9. Any other compensatory damages in an amount to be determined by the trier of fact;

10. Such further relief as this Court deems necessary and proper.

                THE PLAINTIFFS


By_____
   Riccardo L. Pate, Esq.
   155 Post Road East
   Westport, CT 06880
   (203) 226-9922
   (203) 226-2510
   attonreypate@aol.com
   Federal Bar No.  ct 15057